IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| FRED ROBINSON; ASHLEY SPRAGUE; and JOHNNY GIBBS, on behalf of themselves and all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | ) Case No. 3:17-cv-01263<br>)<br>) |
| v. | )<br>) |
| DAVID W. PURKEY, Commissioner of the Tennessee Department of Safety and Homeland Security, in his official capacity, *et al.*, | )<br>)<br>)<br>) |
| Defendants. | ) |

**MOTION OF PLAINTIFFS ROBINSON AND SPRAGUE
FOR A TEMPORARY RESTRAINING ORDER DIRECTING
IMMEDIATE RESTORATION OF THEIR DRIVER'S LICENSES**

The State of Tennessee, through its Department of Safety and Homeland Security (the "Department"), applies Tenn. Code Ann. § 55-50-502(a)(1)(H) and (a)(1)(I) to suspend the driver's licenses of individuals who do not pay fines, costs, and fees arising from traffic violations ("Traffic Debt"). The Department does so without ever determining whether the nonpayment was "willful," as required by the Constitution, or whether—as here and as in most cases—the driver was so poor that s/he simply could not pay. The county and municipal court clerks who use the threat of suspension as a debt-collection tool do not listen to pleas of inability to pay, do not accept partial payments, and do not offer payment plans. When Traffic Debt is not paid, the clerks simply notify the Department, which then automatically effects the suspensions. The Department suspended the driver's licenses of Plaintiffs Fred Robinson and Ashley Sprague in this manner. Both Mr. Robinson and Ms. Sprague live in extreme poverty, often going without food because they struggle to meet the basic necessities of life.

The Complaint in this action, filed on behalf of Mr. Robinson, Ms. Sprague, and another very poor individual whose licenses have been suspended, together with a putative statewide class (with subclasses) of such individuals, alleges that these practices violate the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitution. In a Motion for Preliminary Injunction, filed simultaneously herewith, Plaintiffs and the putative class demonstrate their likelihood of success on those constitutional claims (as well as the other elements of a Motion for Preliminary Injunction). We respectfully refer the Court to the brief in support of that Motion and incorporate by reference the argument and authority included in that Motion.

Fred Robinson and Ashley Sprague cannot wait for resolution of the class-wide Motion for Preliminary Injunction;[1] as set forth in detail in their Declarations and below, their lack of driver's licenses directly imperils their health, their welfare, and their families. Accordingly, Plaintiffs Robinson and Sprague seek by this Motion a temporary restraining order directing Defendant Purkey, the Commissioner of the Department, to restore their driver's licenses immediately, and to do so without fees or other charges.

Plaintiffs Robinson and Sprague request an immediate hearing on this Motion for a Temporary Restraining Order. The Certification of Counsel required by Local Rule 65.01 appears on page 11 of this Motion.

*The Standard for a Temporary Restraining Order*

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

---

[1] See Plaintiffs' Motion for Expedited Discovery, filed herewith. Expedited discovery is not requested in connection with this Motion for a Temporary Restraining Order.

*Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). When constitutional rights are threatened or impaired, the injury is nearly always irreparable. *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012) (citing *ACLU v. McCreary Cnty*, 354 F.3d 438, 445 (6th Cir. 2003)); *Planned Parenthood Ass'n v. Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987) ("[T]here is potential irreparable injury in the form of a violation of constitutional rights."). The test for a temporary restraining order (sought here solely on behalf of Plaintiffs Robinson and Sprague) is generally the same, with perhaps greater emphasis on the immediacy of the harm and the clarity of the showing of right to relief. *E.g.*, *Bredesen v. Rumsfeld*, 2005 U.S. Dist. Lexis 34876, at *16 (M.D. Tenn. Sept. 7, 2005).

We refer the Court to the brief on the Motion for Preliminary Injunction for the operation of the statutory and administrative scheme under section 55-50-502(a)(1)(H) and (I) and for (as noted above) the demonstration that the scheme violates Due Process and Equal Protection.[2] Here we address the harm to Fred Robinson and Ashley Sprague. That harm is clear, immediate and acute.

### *Fred Robinson*

Fred Robinson is 32 years old and lives in Murfreesboro. Robinson Dec. ¶ 2. He suffers severe physical symptoms from a variety of illnesses, including ulcerative colitis, liver cirrhosis, and chronic stomach ulcers (which cause internal bleeding). *Id*. ¶ 3. His illnesses cause him constant pain. *Id*. Mr. Robinson cannot work, and his sole source of income is Social Security Disa-

---

[2] The papers submitted in support of the Motion for Preliminary Injunction include Declarations of each of the named Plaintiffs, as well as a Declaration of Edward P. Krugman that provides background information extracted from various public documents and records. Plaintiffs Robinson and Sprague rely on their Declarations and on the Krugman Declaration in support of this request for a TRO. Plaintiff Johnny Gibbs does not join in the request for a TRO (and partly joins the Motion For Preliminary Injunction), because he is a member of the Multi-Barrier Subclass (as defined in the Complaint) and thus needs relief in both this action and *Thomas v. Purkey* before he may become eligible to obtain a driver's license.

bility benefits of $759 per month. *Id.* ¶ 4. Mr. Robinson depends on his family to provide him financial and other support. *Id.* Even with this assistance, Mr. Robinson typically eats only one meal per day and cannot afford to purchase all of his prescribed medications. *Id.*

Mr. Robinson must frequently travel to Nashville, about 30 miles from his home, for essential medical treatment. *Id.* ¶ 13. Mr. Robinson's physician has also recommended that he start consultation for a potentially life-sustaining liver transplant with a specialist in Memphis. *Id.* In order to begin that process, and to maintain consultation appointments, Mr. Robinson will need to drive to Memphis regularly. *Id.*

The only practicable way to get to Nashville or to Memphis from Mr. Robinson's home in Murfreesboro is to drive. *Id.* He currently relies on his mother and sister to drive him to and from his doctor's appointments, but they cannot always drive him, even to Nashville, because they have other responsibilities. *Id.* ¶¶ 15-16. Mr. Robinson's sister works and has children who need her care. *Id.* Mr. Robinson's mother is a full-time caretaker for his father who has cancer, needs help at home, and himself has many doctor's appointments. *Id.* ¶ 15. His mother and sister cannot drive him to Memphis; they could, however, loan Mr. Robinson a car so that he could drive himself to Nashville or Memphis. *Id.* ¶ 16.

On June 24, 2016, while driving his sister's car in Wilson County, Tennessee, Mr. Robinson received traffic citations for speeding and failing to maintain valid insurance. *Id.* ¶ 5. Mr. Robinson could not pay the Traffic Debt; it was beyond his means. *Id.* ¶ 6.

The Department, upon notification by Defendant Moss's office of Mr. Robinson's nonpayment, mailed Mr. Robinson a notice stating that his driver's license would be suspended unless he satisfied his Traffic Debt within 30 days. *Id.* ¶ 7. The Department then suspended Mr. Robinson's driver's license without considering his ability to pay or giving him an opportunity to

have an ability to pay hearing. *Id*. ¶¶ 9-10. In order to reinstate his license, Mr. Robinson now must pay $441 to Defendant Moss and a $323 fee to the Department. Mr. Robinson goes without basic food and medication on a regular basis; he is not now—and will not be anytime soon—in a position to pay over $700 to regain his driver's license. *Id*. ¶ 11.

Mr. Robinson's need for a driver's license is immediate; without it, he cannot access critical medical care. He recently missed two medical appointments because he could not drive to them; these included an ultrasound of the tubes between his liver and heart to detect blockage, which can result in severe internal bleeding. *Id*. ¶ 17. Mr. Robinson is supposed to receive such ultrasounds because he has had such blockages three times before. *Id*. Each time, he vomited blood, experienced great pain, and was hospitalized for several days. *Id*. Mr. Robinson cannot reschedule the ultrasound because he cannot get to his doctor's office. *Id*. For the same reason, he cannot begin the consultations for a potential liver transplant. *Id.* ¶ 13.

The impact on Mr. Robinson's health extends beyond the urgent appointments described above. Frequent doctor's visits are necessary for monitoring his multiple conditions. *Id*. ¶ 18. Mr. Robinson's ulcerative colitis, for instance, causes sores and cuts in his stomach, and his ulcers give him sharp, burning pain and can force him to rush to the bathroom to pass blood. *Id*. When this happens, Mr. Robinson's doctor has typically prescribed steroids, for which a nurse administers injections, and after which medical staff monitors him. *Id*. Without transportation, Mr. Robinson cannot obtain medical treatment for these painful symptoms. *Id.*

Mr. Robinson also cannot access the pharmacies that provide required prescription medications without being able to drive. *Id*. ¶ 14. He regularly lives without the medications that doctors have determined he needs. *Id*. Once, Mr. Robinson ran out of certain medication and could not acquire more; he woke up unable to speak. *Id*.

Mr. Robinson's need for a driver's license is acute. He cannot wait three months, or potentially even longer, until the preliminary injunction motion is resolved. He needs to be able to drive now.

*Ashley Sprague*

Ms. Sprague is a 26-year-old resident of Lebanon, Wilson County, Tennessee. Sprague Dec. ¶ 2. She has five children, ages 9, 6, 5, 4 and 2, four of whom live with relatives. *Id*. ¶¶ 3, 19. Ms. Sprague can only afford to support one child in her home and is barely able to do that. *Id*. Indeed, she goes several days a month without eating in order to support her child, help support her other children, pay rent, and generally make ends meet. *Id*. ¶ 17. Ms. Sprague has made near-constant efforts over the past few years to secure consistent employment. *Id*. ¶¶ 15-18. She has been unable to obtain and maintain a consistent job because she lacks reliable transportation. *Id*. She has worked at restaurants, gas stations, and now with her mother's cleaning business and her father's mechanic shop. *Id.* ¶¶ 5, 15-17. At every turn, the lack of reliable transportation has been a hindrance to sustaining employment. *Id*. Because she cannot sustain employment, much less seek out educational opportunities that would enhance her options, *id.* ¶ 22, Ms. Sprague is trapped in a cycle of debt and poverty.

Ms. Sprague's inability to obtain and maintain consistent employment is grounded in the suspension of her driver's license by the Department. Because she cannot drive to work, she cannot reliably show up on time or get home, and thus cannot keep a job. *Id.* ¶¶ 15-18. The Department first suspended her license in September 2015, although she did not become aware of this suspension until May 2016. *Id*. ¶ 6. It suspended her license again in September and October of last year. Cplt. ¶ 116; Krugman Dec. Ex. 11. The Department did so, based on notification by the offices of Defendants Gaskill and Linville, the clerks of the Mt. Juliet and Lebanon Municipal Courts, because Ms. Sprague did not pay the hundreds of dollars assessed in Traffic Debt by

those jurisdictions. *Id.* In April 2015, when Traffic Debt of $477.50 was imposed, Ms. Sprague was earning $2.13 per hour, plus tips, as a server at a Waffle House restaurant. Sprague Dec. ¶ 5. The income she had at that point in her life did not even suffice to pay for rent, food, transportation and the care and support of her children—in other words, the bare necessities for survival— much less Traffic Debt. *Id.* She did not pay because she could not pay.

In May 2016, in an effort to attempt to regain her driver's license, Ms. Sprague tried to pay at least $80 toward her Traffic Debt; she was rejected, and told she needed to pay two lump sums of approximately $500 each. *Id*. ¶¶ 9-10. That is the current amount Ms. Sprague would need to pay in order to regain her license, with an additional cost: a $200 reinstatement fee, and a $25 administrative fee in order to enter a payment plan solely for the reinstatement fee. *Id*. ¶ 12. In May 2016, Ms. Sprague was in a position to make small, partial payments toward the large total sum of Traffic Debt. *Id*. ¶ 13. However, now, Ms. Sprague makes even less money and is not in a position to make any payments at all. *Id*. She often faces an impossible choice: feed herself or pay rent and feed her child. *Id*. ¶ 17. She is a mother; she goes without food.

Ms. Sprague also has medical issues that are worsening, for which she should receive surgical intervention. *Id*. ¶ 21. She cannot obtain this intervention without having a driver's license and being able to drive to the doctor and hospital. *Id*. She suffers frequent pain that sometimes requires her to call on family to take her to the emergency room for short-term pain relief and treatment. *Id*. She would not have to do so – and would not suffer the regular pain she suffers – if she could drive to the hospital for scheduled, timely medical care.

If she had a driver's license, Ms. Sprague could immediately acquire sustainable and higher-paying employment. Indeed, she has been told by at least one former employer that she is welcome to return to work if she can drive and reliably appear. *Id*. ¶ 18. Because she has lost so

many jobs over the past two years due to her transportation difficulties, Ms. Sprague has now resorted to the only option before her: to work with her parents in their respective businesses, because they can provide her transportation to those businesses. *Id.* ¶¶ 16-17. She takes home about $150 per week doing this; her rent alone is $200 per week. *Id.* ¶ 16. Ms. Sprague's current situation is desperate. It has increased in urgency over the past two years, with job after job disappearing, but has reached a new moment of need. There is no escape from the situation Ms. Sprague finds herself in—other than to regain her driver's license. *Id.* ¶¶ 14-18. If she regained her driver's license, Ms. Sprague could take affirmative steps to make her life—and that of her children—sustainable. Ms. Sprague cannot wait for the issuance of a preliminary injunction. The harm she and her family suffers every day is too great, and would be directly addressed by the issuance of a TRO as requested.

### *Certification Pursuant to Local Rule 65.01(c)*

The undersigned counsel hereby certify that, on September 20 and 21, they have provided Mr. Meyer with copies of the papers on which this application for a temporary restraining order is based, advised that they would inform him of any hearing set by the Court, and requested that Defendant Purkey consent to the relief sought herein. Defendant Purkey is the sole Defendant against whom relief is sought in this application for temporary restraining order. Mr. Meyer has indicated that he will contact counsel with his client's position as to this application when he receives it; counsel will contact chambers in the event that there is consent in this matter.

Although this application does not directly seek relief from the other Defendants, counsel also reached out to the County Attorneys of Defendants Rutherford and Wilson Counties and to the City Attorney of Defendant City of Lebanon and left messages for them describing the lawsuit, stating that counsel anticipate moving for a temporary restraining order seeking relief from

Defendant Purkey only, and offering to provide copies of the papers. Counsel has sent to them, by e-mail, copies of the papers in support of the application for temporary restraining order.

## CONCLUSION

A temporary restraining order should issue directing Defendant Purkey immediately to restore the driver's licenses of Plaintiffs Robinson and Sprague, without payment of fees.

Respectfully submitted,

s/ Matthew G. White

Matthew G. White (TN #30857)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC
First Tennessee Bank Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
901-577-8182
mwhite@bakerdonelson.com

s/ Claudia Wilner

Claudia Wilner (NY #4264156) (*admitted pro hac*)
Edward P. Krugman (NY #1665892) (*admitted pro hac*)
Theresa Lau (NY #5496526) (*admitted pro hac*)
NATIONAL CENTER FOR LAW AND
ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
212-633-6967
wilner@nclej.org
krugman@nclej.org
lau@nclej.org

s/ Premal Dharia

Premal Dharia (DC #484091) (*admitted pro hac*)
Jonas Wang (NY #5531769) (*admitted pro hac*)
CIVIL RIGHTS CORPS
910 17th Street NW, Suite 500
Washington, DC 20006
202-670-4809
premal@civilrightscorps.org
jonas@civilrightscorps.org

s/ Josh Spickler

Josh Spickler (TN #21019) (*pro hac vice admission forthcoming*)
JUST CITY
902 South Cooper Street
Memphis, TN 38104
901-206-2226
josh@justcity.org

September 21, 2017

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 21st day of September, 2017, a true and correct copy of the foregoing will be served as follows:

On the following via U.S. Mail and Email:

Mike Jennings
Wilson County Attorney
326 North Cumberland Street
Lebanon, TN 37087
mjenningslaw@aol.com

Josh McCreary
Rutherford County Attorney
16 Public Square North
Murfreesboro, TN 37130
jmccreary@mborolaw.com

Andy Wright
Lebanon City Attorney
200 N. Castle Heights Avenue
Lebanon, TN 37087
andy.wright@lebanontn.org

Gino Marchetti
Mount Juliet City Attorney
2908 Poston Avenue
Nashville, TN 37203
gmarchetti@tpmblaw.com

David W. Purkey, in his official capacity as Commissioner
for the Tennessee Department of Safety and Homeland Security
c/o Michael A. Meyer
Tennessee Attorney General, Special Counsel
Law Enforcement and Special Prosecutions
P.O. Box 20207
Nashville, TN 37202
michael.meyer@ag.tn.gov


      /s/ Matthew G. White
      Matthew G. White