UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| FRED ROBINSON, *et al,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 3:17-cv-01263 |
| | ) | JUDGE TRAUGER |
| | ) | |
| DAVID PURKEY, in his official | ) | |
| capacity as Commissioner, Tennessee | ) | |
| Department of Safety and Homeland | ) | |
| Security, *et al,* | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A TEMPORARY RESTRAINING ORDER**

Tennessee Department of Safety and Homeland Security Commissioner David Purkey (the

"Commissioner"), through his counsel, the Tennessee Attorney General and Reporter, submits this

response in opposition to Plaintiffs' Motions for a Temporary Restraining Order ("TRO").

**INTRODUCTION**

Plaintiffs have moved for a temporary restraining order and preliminary injunction

pursuant to Fed. R. Civ. P. 65(b) directing the Commissioner to reinstate driver's licenses that have

been suspended for nonpayment of fines and court costs that were assessed upon their convictions

for violations of traffic laws   (Doc. 24, Page ID. ## 344-45.)  They claim that such fines and costs

have not been paid because they are indigent and thus do not have the ability to satisfy those

obligations.  Plaintiffs contend that Tenn. Code Ann. §§55-50-502(a)(1)(H) and (a)(1)(I), which

authorize such suspensions, are unconstitutional because they make no exceptions for indigent

persons or afford an opportunity to be heard on the issue of ability to pay. The Commissioner

1

suspended the driver's licenses of the two plaintiffs seeking a TRO—Fred Robinson and Ashley Sprague—under § 55-50-502(a)(1)(H) specifically. Plaintiffs ask the Court to order the Commissioner to immediately reinstate their licenses.

Plaintiffs' motion for a TRO should be denied. Although the suspension of Plaintiffs' driver's license has undoubtedly caused them hardship, it is not a constitutional violation, nor does it merit the exercise of the extraordinary remedy of a temporary restraining order. Indeed, under the facts alleged in the complaints, Plaintiffs cannot show that will suffer immediate and irreparable harm. The Complaint alleges that Plaintiff Robinson's license was suspended sometime in 2016 (Doc. 24, Page ID # 347), and Plaintiff Sprague's license was suspended in September 2015. (*Id,* Page ID # 349.) As their licenses have been suspended for a significant period of time, Plaintiffs cannot show that they now need immediate relief. Moreover, Plaintiffs are not likely to succeed on the merits of their constitutional claims of violations of their equal protection or due process rights. Finally, the issuance of an injunction against the enforcement of the statutes is contrary to the public interest and will cause substantial harm to others as the State has chosen this mechanism to enforce traffic laws, an issue in which the State has a compelling interest.

## FACTS

### A. Relevant Statutes Governing Suspension of Tennessee Drivers Licenses

Tennessee Code Ann. § 55-50-502 contains the following relevant provisions regarding the suspension of a Tennessee driver's license:

(a)(1) The department is authorized to suspend the license of an operator or chauffeur upon a showing by its records or other sufficient evidence that the licensee:
. . . .
(H) Has been finally convicted of any driving offense in any court and has not paid or secured any fine or costs imposed for that

2

offense; . . . . ;[1]

> (I) Has failed to appear in any court to answer or to satisfy any traffic
> citation issued for violating any statute regulating traffic. . . .

Prior to suspending an individual's license as provided in Tenn. Code Ann. § 55-50-502(a), the Department must notify the licensee in writing of the proposed suspension and, upon the licensee's request, shall afford the licensee a hearing for the purpose of establishing that there is an error in any records received by the Department. Tenn. Code Ann. § 55-50-502(I). The licensee has 30 days following notification to request a hearing or the right is waived. *Id.*

## B. The Suspension of Robinson and Sprague's Driver's Licenses

Plaintiff Fred Robinson ("Robinson") resides in Rutherford County, Tennessee. (*Id,* Page I.D. # 346.) On June 24, 2016, he was cited for violations of the traffic laws. Robinson has limited financial means and has been unable to pay the fines and costs that were assessed in connection with those violations. (*Id*, Page ID ## 346-48.) In November 2016, the Commissioner notified Robinson that his driver's license would be suspended if he did not pay those fines and costs within 30 days. *See* Affidavit of Randi Davis Cortazar and Exhibit 3 thereto, attached as Exhibit A to the Response. Robinson did not pay those outstanding fines and court costs, *id*, and his license was suspended pursuant to Tenn. Code Ann. § 55-50-502(a)(1)(H) which authorizes the Commissioner to suspend a driver's license in cases where a person has been finally convicted of a driving offense and has failed to pay the fines and court costs imposed for that offense. *See* Exh. 4 to Cortazar

---

[1] Licensees may request a payment plan to pay traffic fines or costs based upon their ability to pay which is subject to approval by the court. *See* Tenn. Code Ann. § 55-50-502 (d). Additionally, any person whose license has been suspended for having been convicted of a driving offense, and for the subsequent failure to pay a fine or cost imposed for that offense, may apply to the court where the person was convicted for the issuance of a restricted license. *See* Tenn. Code Ann. § 55-50-303.

Affidavit, Exh. A.

Plaintiff Ashley Sprague ("Sprague") is a resident of Wilson County, Tennessee. In April 2015, Sprague was cited by the police in Mt. Juliet for speeding and failure to produce proof of insurance. Those violations led to the imposition of $477.50 in fines and court costs. (Doc. 28, Page I.D. # 394.) Sprague did not pay those fines and costs and in September 2015, the Commissioner suspended her license. (*Id.*)

In March and May 2016, Sprague was cited in the City of Lebanon for failure to produce proof of insurance, expired vehicle registration and driving on a suspended license. Those violations resulted in the assessment of an additional $448.50 in fines and court costs which also remain unpaid. (Id, Page I.D. ## 394-95.) Her license was also suspended pursuant to Tenn. Code Ann. § 55-50-502(a)(1)(H).[2]

## ARGUMENT

A motion for a temporary restraining order will be granted only upon a showing "that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). A temporary restraining order is regarded as a strong remedy to be sparingly applied. As this Court has held, "[t]emporary restraining orders and preliminary injunctions are extraordinary remedies 'which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it.'" *Gentry v. Tennessee*, No. 3:17-CV-0020, 2017 WL 3034695, at *2 (M.D. Tenn. July 18, 2017) (Trauger, J.) (quoting *Overstreet v. Lexington–Fayette Urban Co. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002)). A temporary restraining order "is meant to preserve the status quo until a court can make a reasoned

---

[2] Defendants have been unable to provide similar documentation concerning the notice that was sent to Plaintiff Sprague, as they have been unable to identify in the State's Driver's License Database an "Ashley Sprague," age 26 who is a resident of Lebanon, Wilson County, Tennessee, and who has a suspended driver's license or unpaid fines and court costs. *See* Exh. A, Cortazar Affidavit.

4

resolution of a dispute." *Black v. Cincinnati Fin. Corp.*, No. 1:11–CV–210, 2011 WL 1640962, at *1 (S.D. Ohio May 2, 2011) (citing *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226 (6th Cir. 1996)); *accord Moncier v. Jones*, 803 F. Supp. 2d 815, 826 (E.D. Tenn. 2011) (same). To determine whether a temporary restraining order or a preliminary injunction should issue, courts consider four factors: (1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest. *Workman v. Bredesen*, 486 F.3d 896, 905 (6th Cir. 2007). [3]

## I. PLAINTIFFS HAVE NOT SHOWN IMMEDIATE AND IRREPARABLE INJURY TO SUPPORT THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER.

A specific finding of immediate and irreparable injury to the movant is considered the most important prerequisite that a court must examine and find when ruling upon a motion for preliminary injunction. In fact, the absence of irreparable injury must end the court's inquiry. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111-112, 103 (1983); *Warner v. Central Trust Co.,, N.S.*, 715 F.2d 112, 123-24 (6th Cir. 1983); *Aluminum Workers Int'l Union v. Consolidated Aluminum Corp.*, 969 F.2d 437, 444 (6th Cir. 1982). Injunctive relief should not issue to address injury which is neither threatened nor imminent by a defendant merely to assuage a plaintiff's fears. *Roseboro v. Fayetteville City Bd. of Ed.*, 491 F. Supp. 110, 112 (E.D. Tenn. 1977) (citing *Continental Baking Co. v. Woodring*, 286 U.S. 352, 369 (1932)).

Finally, judicial intervention into the activities of state officers discharging in good faith their official duties should be exercised with great restraint. *Integrity International Security*

---

[3] As the Court has set this matter for a TRO hearing at this point and not a preliminary injunction hearing, and given the short amount of time to respond in opposition to Plaintiffs' motion for TRO, the Commissioner anticipates having the opportunity to fully brief his opposition to Plaintiffs' motion for preliminary injunction. He discusses the preliminary injunction factors here to aid the Court in considering the appropriateness of issuing a TRO in this matter.

*Services, Inc. v. United States Department of the Army*, 870 F. Supp. 787, 789 (E.D. Tenn. 1994); *Roseboro*, 491 F. Supp. at 113 (citing *Hawks v. Hamill*, 288 U.S. 52, 60 (1933)).  Furthermore, preliminary mandatory injunctions, issued before a final hearing on the merits, are not regarded with judicial favor and should only be used with caution and in cases of great necessity.  *Roseboro*, 491 F. Supp. at 113.

Plaintiffs' driver's licenses are presently under suspension and have been for some time. According to the Complaint, two of the Plaintiffs have been without driving privileges for at least a year, while the third has had a suspended license since 1999.  Only now are they seeking a temporary restraining order to compel the Commissioner to take the affirmative steps of lifting those suspensions and restoring their driving privileges. (Doc. 24, Page I.D. ## 344-54.)

Such action would not have the effect of preserving the status quo and avoiding immediate and irreparable harm, but would affirmatively change the situation and would effectively grant these Plaintiffs full relief.  Thus, reinstatement of Plaintiff's licenses would go well beyond the intended purpose of temporary restraining orders under Fed. R. Civ. P. 65(b) and such relief would not be in the public interest.  Accordingly, the motion for a temporary restraining order should be denied.

## II.     PLAINTIFFS HAVE FAILED TO DEMONSTRATE ANY LIKELIHOOD OF SUCCESS ON THE MERITS.

To succeed on the merits, Plaintiffs must establish that the Statute violates a constitutional right.  Here Plaintiffs have not shown a likelihood of success on the merits of their equal protection or due process claims.

### 1.   The Statute Does Not Violate the Equal Protection Clause.

#### a.   The Statute is Rationally Related to Legitimate Government Interests.

Plaintiffs argue that the Statute violates the Equal Protection Clause of the Fourteenth

6

Amendment because it makes no allowance for inability to pay and thus unfairly disadvantages indigent people who owe fines and court costs stemming from their convictions for traffic violations. (Doc. 26, Page ID ## 375-379). The Equal Protection Clause prohibits states from making distinctions that (1) burden a fundamental right; (2) target a suspect class; or (3) intentionally treat an individual differently from others similarly situated without any rational basis. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiffs cannot demonstrate that the Statute violates the Equal Protection Clause because (1) a driver's license is not a fundamental right, but a revocable privilege; (2) "wealth" qualifications do not discriminate against a suspect class; and (3) because a driver's license is a revocable privilege, the statutory limitations on that privilege are subject to a rational-basis analysis, which the State clearly meets. Accordingly, Plaintiffs cannot demonstrate a likelihood of success on the merits of their Equal Protection Claim.

State and federal courts have long recognized that the ability to drive a motor vehicle on a public highway is not a fundamental right, but a revocable "privilege" that is granted upon compliance with statutory license procedures. *See Reitz v. Mealey,* 314 U.S. 33, 36-37 (1941), *overruled in part by, Perez v. Campbell,* 402 U.S. 637 (1971); *Goats v. State*, 364 S.W.2d 889, 891 (Tenn. 1963); *Sullins v. Butler*, 135 S.W.2d 930, 932 (Tenn. 1940); *see also Duncan v. Cone,* No. 00–5705, 2000 WL 1828089, *2 (6th Cir. Dec. 7, 2000) (holding that "there is no fundamental right to drive a motor vehicle" and that a burden on a single mode of transportation simply does not implicate the right to interstate travel); *Miller v. Reed,* 176 F.3d 1202, 1205–06 (9th Cir. 1999) (holding that there is no fundamental constitutional right to drive a motor vehicle and the DMV did not unconstitutionally impede plaintiff's right to interstate travel by denying him a driver's license); *Roberts v. State,* 229 F.3d 1164, 2000 WL 1275606, *2 (10th Cir. 2000) (table) (stating

7

that there is no fundamental right to drive a motor vehicle). Accordingly, Plaintiffs lack any fundamental interest to assert.

Plaintiffs also cannot demonstrate that the Statute targets a suspect class. Plaintiffs argue that indigency, i.e., an individual's inability to pay the fines and court costs resulting from their convictions for traffic violations, constitutes a suspect class for purposes of the Equal Protection Clause. Contrary to Plaintiffs' contentions, however, the Sixth Circuit has specifically held that "wealth-based classifications do not discriminate against a suspect class." *Johnson v. Bredesen*, 624 F.3d 742, 746 (6th Cir. 2010) (citing *Papasan v. Allain*, 478 U.S. 265, 283-84 (1986); *Maher v. Roe*, 432 U.S. 464, 470-71 (1977)).[4] As Plaintiff does not otherwise allege that the Statute discriminates against anyone on the basis of race, religion, national origin or any other unlawful reason or purpose, they cannot demonstrate that it is directed toward a suspect class. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985).

Furthermore, to the extent Plaintiffs attempt to characterize themselves as "indigent criminal defendants" who are being treated differently than private debtors, (D.E. 26 at p.25), such characterization is inaccurate. The Tennessee Supreme Court has recognized that the revocation of driving privileges is not a penalty. S*ee Goats*, 364 S.W.2d at 891*; see also Everhart v. State*, 563 S.W.2d 795, 797 (Tenn. Crim. App. 1978) (revoking driving privileges does not subject individual to punishment for either a felony or misdemeanor). Consequently, the revocation or suspension of driving privileges is civil in nature and not criminal. Furthermore, under Tenn. Code

---

[4] The Sixth Circuit specifically addressed the applicability of the cases relied on by the Plaintiff—*Bearden v. Georgia*, 461 U.S. 660 662 (1983), *James v. Strange*, 407 U.S. 128 (1972), and *Griffin v. Illinois*, 351 U.S. 12 (1956)-and found these cases to be inapposite because each of these cases dealt with a fundamental interest, such a physical liberty, right of access to the courts, and the seizure of intimate personal property. 624 F.3d at 748-749. Here, Plaintiffs have asserted no comparable interest, but instead, the "revocable privilege" of a driver's license.

Ann. § 55-50-502(a)(1)(H), a license is only suspended for failure to pay *fines and court costs* and such fines and costs are not equivalent to a private debt. Fines are "a payment to a sovereign as *punishment* for some offense." *Browning-Ferris Indus., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989) (emphasis added). Court costs are defined as "[t]he charges or fees taxed by the court, such as filing fees, courthouse fees and reporter fees." Black's Law Dictionary 372 (8th Ed. 2004). Fines and costs are *not* the same as or equivalent to private debt that is voluntarily incurred by an individual, and consequently, there is no basis for Plaintiffs to assert that they are "indigent criminal defendants" and that they are being treated differently than private debtors. Moreover, the Statute on its face does not distinguish between "indigent" licensees and all other licensees, but treats all licensees the same.

Accordingly, because the Statute does not implicate a fundamental right, nor does it target a suspect class, it is only subject to rational basis review. To survive rational basis review, a statute need only be "rationally related to legitimate government interests." *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 501 (6th Cir. 2007) (internal quotation marks and citation omitted). Thus, a statute "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification," *FCC v. Beach Commc'ns, Inc.* 508 U.S. 307, 313 (1993) and "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Edward J. DeBartolo Corp. v. Fla. Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988) (quoting *Hooper v. California*, 155 U.S. 648, 657 (1985)). Moreover, "a law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for its seems tenuous." *E. Brooks Books, Inc. v. Shelby Cnty., Tenn.*, 588 F.3d 360, 364 (6th Cir. 2009) (quoting *Romer v. Evans*, 517 U.S. 620, 632 (1996)); *see also*

9

*Spurlock v. Fox*, 716 F.3d 383, 400 (6th Cir. 2013) (proof of disparate impact, standing alone, is insufficient to establish a violation of the Equal Protection Clause). Finally, the Supreme Court has recognized that the fact there may be other means better suited to the achievement of governmental ends is of no relevance under rational basis review. *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 77 (2001).

The Supreme Court has held, as a general matter, that "the power of the State to regulate the use of its highways is broad and pervasive." *Bibb v. Navajo Freight Lines Inc.,* 359 U.S. 520, 523 (1959). *See also Reitz v. Mealey,* 314 U.S. at 35 (holding that the "use of the public highways by motor vehicles, with the consequent dangers, renders the reasonableness and necessity of regulation apparent. The universal practice is to register ownership of automobiles and to license their drivers."). Thus, within its powers of regulation, "a state may freely exact registration of the vehicle and an operator's license." *Bradley v. Public Util. Comm'n of Ohio,* 289 U.S. 92, 95 (1933) (citing *Hendrick v. Maryland,* 235 U.S. 610, 622 (1915)); *Sprout v. South Bend,* 277 U.S. 163, 169 (1928)); *see also Ex parte Poresky,* 290 U.S. 30 (1933) (state may require proof of financial responsibility as a condition for licensing of a motor vehicle); *Hess v. Pawloski,* 274 U.S. 352 (1927) (states may require out-of-state drivers to appoint the secretary of state as their agent for service of process for any lawsuits that might arise while driving in the state); *Kane v. New Jersey*, 242 U.S. 160 (1916) (upholding operator licensing and vehicle registration statutes); *Sullins v. Butler*, 175 Tenn. 468, 135 S.W.2d 930, 932 (1940) (legislature, through its police power, may prescribe conditions under which the "privilege" of operating automobiles on public highways may be exercise). Additionally, states are generally afforded significant latitude under the police powers to legislate "as to the protection of the lives, limbs, health, comfort and quiet of all persons." *Neinast v. Bd. of Trustees of Columbus Metro. Library*, 346 F.3d 585, 593 (6th Cir.

2003) (quoting *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996) (quotations and citations omitted)); *see also City of Cleburne*, 473 U.S. at 440 (recognizing that when social or economic legislation is at issue, the Equal Protection Clause allows states wide latitude).

Early on in the advent of motor vehicles, the Supreme Court recognized that "[t]he movement of motor vehicles over the highways is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves." *Hendrick*, 235 U.S. at 622 (1915). The Statutes at issue authorizes the suspension of a Tennessee driver's license upon a showing that a licensee "has been finally convicted of any driving offense in any court and has not paid or secure any fine or costs imposed for that offense" or "has failed to appear in any court to answer or to satisfy any traffic citation for violating any statute regulating traffic." Tenn. Code Ann. § 55-50-501(a)(1)(H) and (I). These provisions clearly advance the State's legitimate exercise of its police power in regulating the use of its public highways by protecting the safety and welfare of its citizens from licensees, who either have been convicted of a driving offense or have failed to appear to answer for the violation of a traffic statute, and who continue to violate the law by failing to comply with court orders requiring the payment of fines and costs. Indeed, the Sixth Circuit has recognized that Tennessee possesses valid interest in encouraging compliance with court orders. *See Johnson v. Bredesen*, 624 F.3d 742, 747 (6th Cir. 2010) (citing *Blackhawk Mining Co. v. Andrus*, 711 F.2d 753, 757-58 (6th Cir. 1983) (upholding statute requiring prepayment of penalty assessments against due process challenge where government had legitimate interest in preventing collection problems and ensuring compliance with the law).

The Statute in question clearly bears a direct and rational relationship to the advancement of the State's interest in regulating the use of its public highways, protecting the safety and welfare of its citizens, and ensuring compliance with court orders and, therefore withstands rational basis

11

scrutiny. Accordingly, Plaintiffs cannot meet their burden of demonstrating a likelihood of success on their Equal Protection claim.

## 2. The Statute Does Not Violate Plaintiffs' Right to Procedural Due Process.

Plaintiffs contend their due process rights have been violated because they received no notice or opportunity to be heard before the Commissioner suspended their licenses. "Procedural due process requires that the government, prior to depriving an individual of their property, provide that individual with notice of the proposed action and an opportunity to be heard." *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 649 (6th Cir. 2015) (citing *Morrison v. Warren*, 375 F.3d 468, 473 (6th Cir. 2004)). "To establish a procedural due process claim, a plaintiff must show (1) the existence of a protected property interest at issue, (2) a deprivation of that protected property interest, and (3) that he or she was not afforded adequate procedures." *Id.* (citing *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 904 (6th Cir. 2014)). Plaintiffs does not have a protected property interest having a driver's license. Furthermore, even if they had a protected property interest, Plaintiffs have failed to demonstrate that they were not afforded adequate post-deprivation remedies.

The first step in any due process analysis is to identify a property interest entitled to due process protections. *Royal Oak Entm't, L.L.C. v. City of Royal Oak*, 316 F. App'x 482, 486 (6th Cir. 2009). "The federal Constitution does not create property interests." *Mertik v. Blalock*, 983 F.2d 1353, 1359 (6th Cir. 1993). Rather, "[a] property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances." *Blazy v. Jefferson Cnty. Reg'l Planning Comm'n*, 438 F. App'x 408, 412 (6th Cir. 2011) (internal citations and quotation marks omitted). However, while state law might create a property interest, "federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by

12

the Due Process Clause." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 855-56 (6th Cir. 2012).

As discussed above, there is no fundamental right to a driver's license. Under Tennessee law, the "driving of an automobile is a privilege, not a property right, and is subject to reasonable regulation under the police power in the interest of the public safety and welfare." *Sullins*, 135 S.W.2d at 932 (upholding dismissal of constitutional challenge to statute requiring suspension of driver's license for failure to satisfy motor accident judgments); *accord State v. Booher*, 978 S.W.2d 953, 956 (Tenn. Crim. App. 1997) (holding the ability to operate a motor vehicle on public roads is a privilege, not a right).

The Supreme Court has held that the Due Process Clause applies to the deprivation of a driver's license by the State:

> Suspension of issued licenses . . . involves state action that adjudicates important interests of the licensees.  In such cases, the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.  This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a right or privilege.

*Dixon v. Love*, 431 U.S. 105, 112 (1977) (quoting *Bell v. Burson,* 402 U.S. 535, 539 (1971)) (alterations in original).  Thus, in suspending a driver's license, the State must provide appropriate due process rights including an opportunity to be heard. The question, then, is what process is required of the State before suspending a driver's license.

In *Dixon v. Love*, the Supreme Court held that the State is not required to conduct a pre-decision administrative hearing before suspending a driver's license. 431 U.S. at 115. The Illinois statute at issue in *Dixon* provided for the summary revocation or suspension of driver's licenses whenever a driver accumulated a set number of penalty points that were assessed upon convictions for convictions on traffic offenses. *Id.* at 107-10. The Court's analysis in *Dixon* is instructive. It

13

applied the following factors set out in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Dixon*, 431 U.S. at 112-13 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). First, the Court held that the "nature of the private interest here is not so great as to require us 'to depart from the ordinary principle, established by our decisions, that something less than an evidentiary hearing is sufficient prior to adverse administrative action.'" *Id.*at 113. (quoting *Matthews*, 424 U.S. at 343). Second, the Court concluded that "the risk of an erroneous deprivation in the absence of a prior hearing is not great." *Id.* The Court noted that, although the suspension and revocation decisions "are largely automatic" under the applicable regulations, the licensee "had the opportunity for a full judicial hearing in connection with each of the traffic convictions" on which the suspension decision was made and had not "challenged the validity of those convictions or the adequacy of his procedural rights at the time they were determined." *Id.* Next, the Court concluded that "requiring additional procedures would be unlikely to have significant value in reducing the number of erroneous deprivations." *Id.*at 114. In reaching that conclusion, the Court noted that the licensee "does not dispute the factual basis" for the suspension of his license, but "is really asserting the right to appear in person only to argue that the Secretary should show leniency and depart from his own regulations." *Id.*at 113. Third, the Court held that "the substantial public interest in administrative efficiency would be impeded by the availability of a pretermination hearing in every case," as the opportunity to "automatically . . . obtain a delay . . . in the suspension or revocation of a license "would encourage drivers routinely to request full administrative

14

hearings." *Id.* at 114 (citing *Matthews*, 424 U.S. at 347). Last, the Court held: "Far more substantial than the administrative burden, however, is the important public interest in safety on the roads and highways, and in the prompt removal of a safety hazard . . . . [T]he Illinois statute at issue in the instant case is designed to keep off the roads those drivers who are unable or unwilling to respect traffic rules and the safety of others." *Id.* at 114-115 (citation omitted).

The Court noted that the case demonstrated that "procedural due process in the administrative setting does not always require application of the judicial model":

> When a governmental official is given the power to make discretionary decisions under a broad statutory standard, case-by-case decisionmaking may not be the best way to assure fairness . . . . The decision to use objective rules in this case provides drivers with more precise notice of what conduct will be sanctioned and promotes equality of treatment among similarly situated drivers. The approach taken by the District Court would have the contrary result of reducing the fairness of the system, by requiring a necessarily subjective inquiry in each case as to a driver's "disrespect" or "lack of ability to exercise ordinary and reasonable care."

*Id.* at 115.

Here, as in *Dixon*, Plaintiffs "had the opportunity for a full judicial hearing in connection with each of the traffic convictions." *Dixon*, 431 U.S. at 113. Tenn. Code Ann. § 55-5-501(a)(1)(H)—the statute Plaintiffs challenge—authorizes the suspension of a driver's license upon a showing that the licensee "[h]as been finally convicted of any driving offense in any court and has not paid or secured any fine or costs imposed for that offense." Also, as in *Dixon*, Tennessee's statute provides "objective rules" which give drivers "precise notice of what conduct will be sanctioned and promotes equality of treatment among similarly situated drivers." *Dixon*, 431 U.S. at 115. In *Dixon*, Illinois provided no notice before suspending or revoking a license, a process the Supreme Court described as "largely automatic," and held that if there was a clerical error, "written objection will bring a matter of that kind to the Secretary's attention. *Id.* at 113.

Although procedural due process does not require it, Tennessee actually does provide

15

written notice to licensed drivers informing them of their unpaid fines and court costs and that their licenses will be suspended in 30 days if those fines remain unpaid and the opportunity for a hearing, as evidenced by the letter it sent Plaintiff Fred Robinson. (Exh. A, Cortazor Affidavit, ¶¶ 6-8, Ex. 1-4.) As set forth in the letter, a licensee who receives a notice that license revocation is impending may obtain a hearing before the Commissioner where evidence may be presented on the issue whether the Commissioner has erred in moving to suspend the license. According to the letter, those issues are whether the notice has been sent to the wrong person and whether the fines and costs have indeed been paid. (*Id.*) Neither *Dixon* nor any other authority cited to this Court requires more.

What Plaintiffs seek is a pre-suspension hearing regarding ability to pay, but they have no authority that suggests that is required by the Due Process Clause in this context. Instead, they cite numerous cases that are completely inapposite because they are in the criminal context, unlike the suspension of Plaintiffs' driver's licenses. For example, Plaintiffs rely on *Bearden v. Georgia*, 461 U.S. 660 (1983), for a four-part test used to analyze "the coercive actions that the government can impose for nonpayment of a fine." (Doc. 26 at 11-12, PageID # 375-76.) But the question in *Bearden* was whether "a sentencing court can revoke a defendant's probation for failure to pay the imposed fine and restitution, absent evidence and findings that the defendant was somehow responsible for the failure or that alternative forms of punishment were inadequate." *Bearden*, 461 U.S. at 665. In *Johnson v. Bredesen*, 624 F.3d 742 (6th Cir. 2010), the Sixth Circuit rejected constitutional challenges, including equal protection, brought by convicted felons who alleged that a Tennessee statute that conditioned restoration of their voting rights on payment of court-ordered victim restitution and child support obligations violated their equal protection rights, among other constitutional challenges. *Id.* at 744. The Sixth Circuit rejected the applicability of *Bearden* and

other cases that, like *Bearden*, "implicate[] physical liberty and effectively 'turned a fine into a prison sentence'" in a context involving a civil issue like the ability to vote. *Id.* at 748 (quoting *Bearden*, 461 U.S. at 674). This line of cases is similarly inapplicable here, as the privilege to drive is clearly a civil matter.

Plaintiffs ask this Court to take huge leaps from existing case law with no authority to support their position. Indeed, Plaintiffs have no authority that holds that a State must hold a pre-suspension hearing before suspending a driver's license that takes into account a driver's ability to pay. At least one district court has explicitly rejected such an argument. *Evans v. Rhodes*, No. 3:14CV466/MCR/CJK, 2016 WL 5019202, at *7 (N.D. Fla. Feb. 29, 2016) ("The Department is not constitutionally required to provide Evans with a pre-suspension hearing to determine his ability to pay court costs before suspending his driver's license."), report and recommendation adopted, No. 3:14CV466/MCR/CJK, 2016 WL 5024202 (N.D. Fla. Sept. 16, 2016). Plaintiffs dislike Tennessee's public policy of requiring that drivers pay their traffic citations and court costs to continue to receive the privilege of driving in the state, but as the Sixth Circuit held in *Johnson v. Bredesen*, the preference "that the state not discriminate on the basis of wealth when providing statutory benefits . . . is an argument that must be resolved by the legislature, not this Court."

To state a claim under 42 U.S.C. § 1983 for a procedural due process violation, Plaintiffs must prove that state processes for redress are inadequate. *See Vicory v. Walton,* 721 F.2d 1062, 1066 (6th Cir.1983) ("In a procedural due process case under section 1983, the plaintiff must attack the state's corrective procedure as well as the substantive wrong."); *Jefferson v. Jefferson County Pub. Sch. Sys.,* 360 F.3d 583, 588 (6th Cir. 2004) ("Plaintiff may not seek relief under *Section 1983* without first pleading and proving the inadequacy of *state or administrative processes or remedies* to redress her due process violations). As Plaintiffs have failed to so prove, they have not shown a

likelihood of success on the merits of a procedural due process claim.

To the extent Plaintiffs are also arguing that they have substantive due process right to have indigency be a factor the Commissioner is required to consider before suspending a driver's license under the Statute, this argument is without merit. In *Bennis v. Michigan*, 516 U.S. 442 (1996), the Supreme Court considered a claim by a woman who co-owned a car with her husband. Michigan abated the car after the woman's husband, unbeknownst to her, engaged in an unlawful encounter with a prostitute in it. *Id.* at 444. Mrs. Bennis framed her claim as a procedural due process claim, but the Supreme Court concluded that she was actually claiming "she was entitled to contest the abatement by showing she did not know her husband would use it to violate Michigan's indecency law." *Id.* at 446. The *Bennis* Court declined to "import[] a culpability requirement" into Michigan's abatement scheme." *Id.* at 451-53. Relying on *Bennis*, another district court declined to rewrite an ordinance that authorized the city of Chicago to dispose of cars whose owners had "repeatedly ignored lesser civil penalties" for parking infractions "by importing a requirement that the City ascertain, prior to disposition, that the owner intends to abandon her impounded vehicle." *Robledo v. City of Chicago*, 778 F. Supp. 2d 887, 896 (N.D. Ill. 2011). Here, Plaintiffs similarly seek to have this Court import an indigency defense to the State's enforcement of the Statute, but she has no authority to support such a holding.

Accordingly, Plaintiffs cannot meet their burden of demonstrating a likelihood of success on their Due Process claim—both procedural and substantive.

## III. THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER IS NOT IN THE PUBLIC INTEREST.

In addition to the factors the Court must weigh in deciding whether to grant a temporary restraining order, the Court must also consider the public interest. *Krall v. Com. of Pa.*, 903 F. Supp. 858, 860 (E.D. Pa. 1995). In examining the public interest in the context of injunctive relief,

Courts have found that the government's interest in promoting traffic safety is compelling. *Satawa v. Macomb Ct. Rd. Comm'n*, 689 F.3d 506, 515-16 (6th Cir. 2012) (finding a state board had a compelling interest in promoting traffic safety, justifying the denial of a protest permit); *see also Dixon*, 431 U.S. at 114-15 (holding states have "important public interest in safety on the roads and highways" and "keep[ing] off the roads those drivers who are unwilling to respect traffic rules and the safety of others"); *Weed v. Jenkins*, No. 4:15 CV 140 RLW, 2015 WL 6555413 at *4 (E.D. Mo. Oct. 28, 2015) (finding a legitimate state interest in "enforcing the traffic laws, promoting safety upon the highways, and regulating traffic flow," outweighing any harm from the denial of the plaintiff's constitutional right to protest.").

In this case the State has a compelling public interest in promoting public safety by enforcing its traffic laws and keeping serial violators off the road. This interest outweighs the Plaintiffs' interest in a State-granted privilege like driving. And while each Plaintiff's individual circumstances for needing a driver's license are unfortunate, allowing chronically uninsured, dangerous motorists to continuing driving presents an unacceptable danger to the public.[5]

## CONCLUSION

For the foregoing reasons, the Commissioner respectfully requests that the Court deny Plaintiffs' motion for a temporary restraining order in this matter.

Respectfully submitted,

HERBERT H. SLATERY III
Attorney General and Reporter

/s/ Michael A. Meyer
MICHAEL A. MEYER (9230)
Special Counsel

---

[5] The complaint identifies speeding as the cause of the initial traffic stops for two of the Plaintiffs but does not indicate the severity of the violations, nor does it reveal the cause of the subsequent traffic stops. Ms. Sprague was stopped three times in 13 months, and was ticketed each time for driving without insurance. Furthermore, the Complaint lacks the information the State requires to identify the Plaintiffs for potential reinstatement.

19

Law Enforcement &
Special Prosecutions Division
Michael.Meyer@ag.tn.gov
(615) 741-4082


/s/ Katherine M. Dix
KATHERINE M. DIX (22778)
Special Counsel
Public Interest Division
P.O. Box 20207
Nashville, TN   37202
Katherine.Dix@ag.tn.gov (615) 532-5817


/s/ Scott C. Sutherland
SCOTT C. SUTHERLAND
Deputy Attorney General
Law Enforcement and
Special Prosecutions Division
P.O. Box 20207
Nashville, Tennessee 37202-0207
(615) 532-7688
B.P.R. No. 29013

## CERTIFICATE OF SERVICE

I certify that the foregoing Notice of Appearance was filed electronically on September 29, 2017. A copy of the foregoing was sent automatically by the Court's electronic filing system via a notice of docket entry to the following attorneys of record:

Mike Jennings
Wilson County Attorney
326 North Cumberland Street
Lebanon, TN 37087
mjennningslaw@aol.com

Josh McCreary
Rutherford County Attorney
16 Public Square North
Murfreesboro, TN 37130
jmccreary@mborolaw.com

Andy Wright
Lebanon City Attorney
200 N. Castle Heights Avenue
Lebanon, TN 37087
andy.wright@lebanontn.org

Gino Marchetti
Mount Juliet City Attorney
2908 Poston Avenue
Nashville, TN 37203
gmarchetti@tpmblaw.com

Matthew G. White
BAKER, DONELSON, BEARMAN,
CALDWELL & BEKOWITZ, PC
First Tennessee Bank Building
165 Madison Avenue, Suite 2000
Memphis Tennessee 38103
mwhite@bakerdonelson.com

Premal Dharia
Jonas Wang
CIVIL RIGHTS CORP
910 17th Street NW, Suite 500
Washington, DC 20006
primal@civilrightscorp.org
jonas@civilrightscorps.org

Claudia Wilner
Edward Krugman
Theresa Lau
NATIONAL CENTER FOR LAW
AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
wilner@ncleg.org
krugman@nclej.org
lau@nclej.org

Josh Spickler
JUST CITY
902 South Cooper Street
Memphis, TN 38104
josh@justcity.org

/s/ Michael A. Meyer
MICHAEL A. MEYER
Special Counsel