# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| FRED ROBINSON; ASHLEY SPRAGUE; and JOHNNY GIBBS, on behalf of themselves and all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiffs, | ) Case No. 3:17-cv-01263<br>)<br>) |
| v. | )<br>) |
| DAVID W. PURKEY, Commissioner of the Tennessee Department of Safety and Homeland Security, in his official capacity, *et al.*, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**REPLY MEMORANDUM OF PLAINTIFFS ROBINSON
AND SPRAGUE IN SUPPORT OF MOTION FOR A
TEMPORARY RESTRAINING ORDER**

Plaintiffs Fred Robinson and Ashley Sprague respectfully submit this Reply Memorandum in response to Defendants' Opposition ("Opp.") to their Motion for a Temporary Restraining Order (TRO) and in further support of the Motion. Because these Plaintiffs have been and continue to be irreparably injured by what they will likely succeed in showing was the unconstitutional suspension of their driver's licenses, the TRO should issue.

I. **PLAINTIFFS ROBINSON AND SPRAGUE ARE LIKELY TO SUCCEED ON THE MERITS**

The Commissioner makes two basic substantive arguments against the unconstitutionality of Tenn. Code Ann. § 55-50-502(a)(1)(H) and (I). First, he argues that driving is a "privilege," not a "right," and asserts that the State thus has unchecked authority in how it deals with those to whom it grants the "privilege" (Opp. 6-8). Second, he argues (Opp. at 6-11) that the constitutional test to be applied in this case is the type of rational basis test applied to economic legislation. Neither argument has merit.

The Commissioner's distinction between "rights" and "privileges" (Opp. at 6-8) is based on two cases from before World War II—*Reitz v. Mealey*, 314 U.S. 33, 36-37 (1941), *overruled in part by Perez v. Campbell*, 402 U.S. 637 (1971), and *Sullins v. Butler*, 135 S.W.2d 930, 932 (Tenn. 1940) (Opp. at 7)—and ignores subsequent cases holding that driver's licenses, once granted, are important property interests that are protected by the Constitution, *e.g.*, *Bell v. Burson*, 402 U.S. 535, 539 (1981); *see generally* Memorandum in Support (ECF #26 at 16).[1]

---

[1] Neither *Duncan v. Cone*, 2000 WL 1828089 (6th Cir. Dec. 7, 2000) (unpublished), nor *Miller v. Reed*, 176 F.3d 1202 (9th Cir. 1999), even involved suspensions or revocations; both simply upheld, against challenges on religious grounds, the facially neutral requirement that drivers provide their Social Security numbers as part of the license application process. *Roberts v. Colorado*, 2000 WL 1275606 (10th Cir. 2000) (unpublished), likewise did not involve suspension or revocation but simply rejected assertions by a *pro se* litigant that he was not required to have a driver's license at all and that the counties that sought to prosecute him lacked jurisdiction because their American flags had a "yellow fringe."

*Bell*, in fact, expressly rejected the very "right/privilege" distinction on which the Commissioner relies:

> Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement *whether the entitlement is denominated a "right" or a "privilege."*

*Id.* (emphasis added).

The Commissioner's second argument fares no better, as it is the four-part balancing test of *Bearden v. Georgia*, 461 U.S. 660 (1983), that applies to this case, as Plaintiffs showed in their Motion and discuss further below. And because *Bearden* does apply, Plaintiffs are not merely likely but certain to succeed on the merits of their constitutional claims.

The *Bearden* four-part test starts with the importance of the interest at stake, and the Commissioner has not even attempted to address Plaintiffs' showing that, in Tennessee, the ability to drive is central to basic subsistence. The ongoing consequences to Plaintiffs Robinson and Sprague through suspension of their licenses do not merely demonstrate their personal irreparable injury (although they clearly do that). They illustrate what the record establishes and the Commissioner does not contest: if you cannot drive in Tennessee, you cannot work, you cannot go to the doctor, and you cannot feed your family.

The Commissioner does not dispute this. Moreover, although he attempts to wrap the Statute in the public safety/highway safety mantel, he does not and cannot contest that people adjudged to have done *exactly* the same things as Plaintiffs Robinson and Sprague *would* be allowed to continue to drive if they could afford to pay enough to buy their licenses back. This is not about public safety; this is about debt collection. Accordingly, and as set forth in greater detail in Plaintiffs' Motion (at 11-15), the Statute clearly fails the *Bearden* test.

2

The Commissioner's response is twofold. First, citing *Johnson v. Bredesen*, 624 F.3d 742 (6th Cir. 2010), he asserts that *Bearden* is limited to cases of potential incarceration (Opp. at 16-17). Second, he argues (Opp. at 17) that a district court in Florida has rejected application of *Bearden* in circumstances similar to those here. Again, neither argument has merit.

*Johnson v. Bredesen* involved felony disenfranchisement. That is, the right to vote was taken away *as part of the punishment for the crime of which the defendant had been convicted*. Here, the Commissioner concedes that "revocation of driving privileges is not a penalty" (Opp. at 8) that attaches to ordinary traffic violations. Instead, driver's license suspension is here used as a coercive debt collection tool and, when applied to people who do not pay because they cannot pay, is fundamentally unfair.

In *Johnson v. Bredesen* the Sixth Circuit noted that *Bearden* involved incarceration, but that was neither the holding of the case nor the basis on which the court distinguished *Bearden*. Instead, the Sixth Circuit held that the legislature was free to place restrictions on felony re-enfranchisement, because felony re-enfranchisement was simply an act of grace conferred by the legislature. *That* was the basis on which the court distinguished *Bearden*:

> Tennessee's re-enfranchisement conditions, by contrast [to *Bearden*], merely relate to the restoration of a civil right *to which Plaintiffs have no legal claim*, and [thus] invoke only rational basis review.

624 F.3d at 748-49 (emphasis added).

The situation here is exactly the opposite of that in *Johnson*. Here, it is not a matter of restoring something that was legitimately taken away; rather, this case is about the illegitimacy of the deprivation itself. Where, as here, what is deprived is as critical as the ability to drive, the *Bearden* balancing test is directly on point and *Johnson* is inapposite.

*James v. Strange* reinforces this point, both in its own terms and because it makes clear that the *Bearden* line of cases is not limited to incarceration (which was not at issue in

3

*Strange*). As Plaintiffs pointed out in their Motion (at 18-19), *James v. Strange* involved Kansas's use of its sovereign powers to benefit itself as creditor in ways very similar to Tennessee's leveraging of its power over driver's licenses here. The Commissioner dodges Plaintiffs' analysis of the parallels between the two statutory schemes; indeed, his only mention of *James v. Strange* is in a footnote, in which he asserts that the case involved a "fundamental interest" in "the seizure of intimate personal property" (Opp. at 8 n.4). In doing so, the Commissioner lifts language not from *Johnson* but from *Olson v. James*,[2] which was a "*see also*" citation in *Johnson*, and he fails to note that *Olson v. James* also specifically emphasized the need to protect "wages"—*i.e.*, basic economic subsistence—an understanding of *Strange* that encompasses the harms Plaintiffs are experiencing here.

The Sixth Circuit acknowledged in *Johnson* that *Strange* applied a more stringent test than rational basis in order to give protection to "'the hopes of indigents for self-sufficiency and self-respect,'" 624 F.3d at 749 (quoting *Strange*, 407 U.S. at 141-42). It held, however, that "[p]laintiffs here assert no comparable interest," *id.*, since the plaintiffs in *Johnson* were principally asserting an unwillingness to pay, not an inability to pay. The Court of Appeals in *Johnson* thus distinguished *Strange* on the same basis on which it had distinguished *Bearden*: rational basis applied because there was no deprivation of an important interest, but simply the imposition of a condition on "the mere 'statutory benefit' of re-enfranchisement." *Id*. Here, like *Strange* and *Bearden* and unlike *Johnson*, something—something very important, the ability to drive—*is* being taken away. Accordingly, the applicable tests here are those of *Bearden* and *Strange*.

The second decision relied on by the Commissioner here, *Evans v. Rhodes*, 2016 WL 5019202 (Feb. 29, 2016), *adopted*, 2016 WL 5024202 (N.D. Fla. Sept. 16, 2016), *appeal filed*, No. 17-12046 (11th Cir. May 2, 2017), is instructive less for its superficial treatment of *Bearden*

---

[2] 603 F.2d 150, 154 (10th Cir. 1979), cited in *Johnson v. Bredesen*, 634 F.3d at 749.

4

than for its facts. The Florida scheme at issue in *Evans* expressly provides for payment plans tied to a percentage of the driver's annual net income, and the *pro se* plaintiff there had in fact availed himself of the payment plans. 2016 WL 5019202 at *4. If Tennessee and Wilson County had had such provisions in place, Ashley Sprague would be working and driving right now.

Indeed, the line of Second Circuit criminal cases cited by the Magistrate Judge in *Evans* is instructive on the meaning of *Bearden*. For instance, the Magistrate Judge cited to *United States v. Pagan*, 785 F.2d 378 (2d Cir. 1986) (cited at 2016 WL 5019202 at *5). While *Pagan* did refer in one place to enforcement of judgments by incarceration, *id.* at 382, one paragraph earlier it addressed the issue of enforcement in general, without any mention of incarceration at all. Quoting *United States v. Hutchings*, 757 F.2d 11, 14-15 (2d Cir.), *cert. denied*, 472 U.S. 1031 (1985), the *Pagan* court said: "Constitutional principles will be implicated here only if the government seeks to enforce collection of the assessments '"'at a time when [Pagan is] unable, through no fault of his own, to comply.'"'" 785 F.2d at 381. And *Hutchings* followed *Bearden* to require a willfulness finding for the enforcement of criminal money judgments— *without making any reference to incarceration whatsoever*. *Pagan* and *Hutchings* indicated, therefore, that *Bearden* is violated where (as here) enforcement of a money judgment by imposition of a punishment occurs without any inquiry into ability to pay. Likewise, *James v. Strange* is violated where (as here) the means of enforcement of a judgment debt is available only to the government and not to private creditors.

## II. PLAINTIFFS ROBINSON AND SPRAGUE ARE SUFFERING IMMEDIATE IRREPARABLE INJURY

The Commissioner does not take issue with the dire circumstances described by Plaintiffs Robinson and Sprague; he suggests, however, that because Plaintiffs' licenses have been suspended for some time, there is no need for relief now. But that Plaintiffs have tried and

5

failed to manage under their present circumstances, and that their already difficult circumstances have worsened over time, does not eliminate the need for relief; it increases it. Indeed, the passage of time has concretized what the Commissioner might, immediately upon suspension, have argued was mere speculation as to harm.[3] Mr. Robinson is in ongoing medical jeopardy from his inability to get to his doctors, and Ms. Sprague has lost job after job because she has no reliable way of getting to work. What matters for issuance of a TRO is whether the Plaintiffs need relief *now*, and there can be no meaningful dispute that they do.

The Commissioner's reference to preserving the status quo is likewise misguided. The "status quo ante" here is that Mr. Robinson and Ms. Sprague previously had valid driver's licenses and had some of the "self-sufficiency and self-respect" that the Supreme Court noted in *Strange* and the Sixth Circuit acknowledged in *Johnson*, 624 F.3d at 749 (quoting *Strange*, 407 U.S. at 141-42). It was the Commissioner who changed that status quo by unconstitutionally depriving them of their licenses, and reinstatement *pendente lite* is routine in cases of wrongful deprivation. *E.g.*, *Golden v. Kelsey-Hayes Co.*, 73 F.3d 648 (6th Cir. 1996) (affirming preliminary injunction reinstating benefits); *Dozier v. Haveman*, 2014 U.S. Dist LEXIS 153394, at *33-*35 (E.D. Mich. Oct. 29, 2014) (granting preliminary injunction reinstating benefits); *Bunn Enters. v. Ohio Operating Eng'rs Fringe Benefit Programs*, 2013 U.S. Dist LEXIS 86211, at *43 (S.D. Ohio June 19, 2013) (same); *Soave v. Milliken*, 497 F. Supp. 254, 257-58, 263-64 (W.D. Mich. 1980) (same). The Commissioner's assertion (Opp. at 5-6) that there is some special protection for officials enforcing state statutes is based on two cases that denied relief because plaintiff was not likely to succeed on the merits. *Roseboro*, *supra*; *Integrity Int'l Sec. Servs. v. United States Dep't of the Army*, 870 F. Supp. 787 (M.D. Tenn. 1994). Here, however, Plaintiffs are

---

[3] That was precisely the basis for the denial of preliminary injunctive relief in *Roseboro v. Fayetteville City Bd. of Ed.*, 491 F. Supp. 110, 112 (E.D. Tenn. 1977) (Opp. at 5-6).

6

likely to succeed on the merits, so that the words of the Sixth Circuit in *Planned Parenthood Ass'n v. Cincinnati*, 822 F.2d 1390, 1400 (6th Cir. 1987), are directly on point:

> [T]here is a likelihood that the Ordinance will be found unconstitutional; it is therefore questionable whether the City has any "valid" interest in enforcing the Ordinance. Consequently, we find no substantial harm in preventing the City from enforcing.

## CONCLUSION

A temporary restraining order should enter requiring Defendant Purkey to reinstate—immediately and without fees—the driver's licenses of Plaintiffs Robinson and Sprague pending the hearing and determination of the Motion for Preliminary Injunction.

s/ Matthew G. White
Matthew G. White (TN #30857)
BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC
First Tennessee Bank Building
165 Madison Avenue, Suite 2000
Memphis, Tennessee 38103
901-577-8182
mwhite@bakerdonelson.com

s/ Claudia Wilner
Claudia Wilner (NY #4264156)*
Edward P. Krugman (NY #1665892)*
Theresa Lau (NY #5496526)*
NATIONAL CENTER FOR LAW AND ECONOMIC JUSTICE
275 Seventh Avenue, Suite 1506
New York, NY 10001
212-633-6967
wilner@nclej.org
krugman@nclej.org
lau@nclej.org

s/ Premal Dharia
Premal Dharia (DC #484091)*
Jonas Wang (NY #5531769)*†
CIVIL RIGHTS CORPS
910 17th Street NW, Suite 500
Washington, DC 20006
202-670-4809
premal@civilrightscorps.org
jonas@civilrightscorps.org

s/ Josh Spickler
Josh Spickler TN (TN #21019)*
JUST CITY
902 South Cooper Street
Memphis, TN 38104
901-206-2226
josh@justcity.org

October 3, 2017

\* Admitted Pro Hac Vice
† *Admitted to practice in New York; not admitted in the District of Columbia (application pending). Practice is limited pursuant to D.C. App. R. 49(c)(3)*